(No. 17517.—Judgment reversed; award set aside.)
ARMOUR & Co., Plaintiff in Error, *vs.* THE INDUSTRIAL
COMMISSION *et al.*—(CATHERINE BURKE, Defendant in
Error.)

*Opinion filed October 28, 1926.*

1. WORKMEN'S COMPENSATION—*application must be sufficient to advise employer of nature of claim.* While the application for adjustment of claim need not state all the elements of a cause of action as in a declaration in an action at law and is not a formal pleading, it is essential that it state formally the time, place, manner and character of the accident, so that the employer may be advised of the nature of the claim and prepare his defense.

2. SAME—*burden is on claimant to prove liability as alleged in application.* The rules as to the admission of evidence and the burden of proof are the same in compensation cases as in common law actions for personal injuries, and where the claim filed with the Industrial Commission is based upon specific allegations as to the accident or cause of death, the burden rests upon the claimant to show liability as alleged.

3. SAME—*when allegation as to cause of death is not sustained by proof.* In an application for compensation for the death of an employee, an allegation that death was caused by septicæmia following an injury to the finger is not sustained where there is no evidence of infection and the weight of the evidence tends to show that the employee had a weak heart and that death was due to acute dilation of the heart following a minor operation not connected with the injury alleged, to the administering of spirits of ammonia and the climbing of a long flight of stairs immediately thereafter.

DEYOUNG, J., took no part.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

CHARLES J. FAULKNER, JR., WALTER C. KIRK, and A. B. REID, for plaintiff in error.

JACOB S. COOK, (GEORGE A. SCHNEIDER, of counsel,) for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Catherine Burke, the widow of James Burke, deceased, filed an application for adjustment of claim with the Industrial Commission of Illinois, alleging that deceased on April 19, 1924, while employed as a laborer in the curled hair department of Armour & Co., cut his finger and that septicæmia set in, causing his death on June 2, 1924. The hearing before the arbitrator resulted in the finding that deceased did not come to his death as the result of an accident arising out of and in the course of his employment. Upon review before the Industrial Commission additional evidence was introduced and the commission entered an award in favor of the claimant, which award was confirmed by the circuit court of Cook county. Plaintiff in error, by leave of this court, has brought the record here for review upon writ of error.

The evidence shows that on April 19, 1924, deceased, while pushing a truck, sustained a fracture of the fourth metacarpal bone of his left hand by reason of its coming in contact with another truck. He immediately went to the company's physician, who testified that he found the dorsal surface of the left hand swollen from the knuckles to the wrist and that there were no abrasions or discolorations. The doctor put a combination salve upon the hand, bandaged it and told deceased to soak it in hot water. He reported to the doctor on April 22, 1924, at which time the hand was not swollen quite as much but he complained of pain on palpation of the hand. The doctor then had an X-ray taken, which showed the fracture, and he then put the hand in a splint and deceased returned to work. He reported to the doctor at regular intervals during a period of about five weeks, at which visits the splint would be changed and clean bandages put on. On the 16th of May another X-ray was taken to determine whether or not the point of fracture was ossified. This X-ray picture disclosed

the presence of a foreign substance in the second finger. Upon the hearing it was stipulated that on June 23, 1921, while deceased was working for another company he sustained an injury to this finger, and that this foreign substance, which was a piece of steel, was left imbedded in the finger. On June 2, 1924, deceased asked the doctor if he would remove this piece of steel. The doctor washed the finger with alcohol, froze the portion of the finger where the steel was located with ethyl chloride, made a small incision and with a tissue forceps removed the piece of steel, which was about the size of the head of a pin. The operation was a minor one and took less than five minutes. Deceased watched it and became pale and faint. The doctor gave him some spirits of ammonia, which revived him so that he expressed a desire to return to his work, which he did. A few minutes thereafter he began coughing and vomiting and was advised by the foreman to see the doctor and then go home. He then walked up six flights of stairs, although there was an elevator for the use of the employees, and went to the doctor's office, where he died shortly thereafter. A post-mortem examination was made on the day of his death and the cause of death was discovered to be acute dilation of the heart. The heart was more than twice its normal size, the walls thin and there was considerable fatty degeneration, and also some degeneration of the kidneys.

Claimant testified that prior to April 19 deceased was healthy, so far as she knew; that on April 19, when he came home, his hand was tied up and there was cold sweat on his forehead; that after that time he had no appetite; that from the time of the accident until his death the swelling in his hand did not go down; that before he was hurt he weighed 167 pounds and two weeks after he got hurt he must have weighed about 140 pounds, but that she did not know how much he weighed; that he could not sleep more than two hours a night. Another witness testified

that prior to his death the swelling had been entirely reduced; that deceased worked every day from the time of the accident until the day of his death; that he was in jovial spirits and that he ate very hearty lunches; that he did his work well and that there was nothing in his appearance or conduct to indicate that he was laboring under pain and suffering.

The evidence of the experts upon both sides is to the effect that a chronic condition of fatty degeneration of the heart comes on slowly and is the result of slow poisoning over a long period of time. Claimant's principal expert stated, on cross-examination, that in his opinion deceased would have died before June 2 if the statement that he only got two hours sleep each night had been positively true, and that the fracture described would not make him lose all that sleep. At the hearing before the arbitrator claimant's experts gave it as their opinion that there could be a connection between the accident and the death of deceased, giving as the basis of their opinion that infection from the finger would tend to cause a dilation of the heart. The evidence, however, of the coroner's physician, who made a post-mortem examination, the attending physician who was present at the post-mortem examination, and all the other witnesses having any knowledge upon the subject, is to the effect that there was no abrasion upon the fingers of deceased as a result of the accident and that there was no infection. Upon the examination before the commission, after evidence had been introduced tending to show that after the operation deceased had walked up six flights of stairs, the experts gave it as their opinion that the operation, the administering of spirits of ammonia and the walking up of six flights of stairs were the material elements contributing to bring about the death of deceased.

The evidence shows that a person with a heart in the diseased condition of that of deceased was liable to die at any time, while he was at rest, asleep, on the street or at

any place, without any superinducing cause.  The great weight of the evidence shows that the fracture of the meta-carpal bone had nothing to do with deceased's death, but that if anything, aside from the natural course of the disease, hastened the death of deceased it was the operation for the removal of the piece of steel, the administering of spirits of ammonia and the ascent of the six flights of stairs. The operation was entirely disconnected from the employment.  There was no connection whatever between the operation and the fracture of the metacarpal bones, but it was simply a gratuitous act on the part of the doctor.  Claimant did not base her claim upon the operation, the administering of the spirits of ammonia or the climbing of the stairs, and no mention is made of either one of them in her statement of claim filed with the commission.  The application for adjustment of claim is in the nature of a pleading, and while it need not state all the elements of a cause of action as in a declaration in an action of law and is not a formal pleading, it is essential that it state formally the time, place, manner and character of the accident, so that the employer will be advised of the nature of the claim and can properly prepare his defense.  (*Madison Coal Corp.* v. *Industrial Com.* 320 Ill. 65.)  The rules with reference to the admission of evidence and the burden of proof are the same in compensation cases as in common law actions for personal injuries, and when a claimant files a claim with the Industrial Commission, basing the claim upon specific allegations as to the accident or cause of death, the burden of proof rests upon the claimant to show liability under the allegations of the application for compensation.  (*Consumers Co.* v. *Industrial Com.* 315 Ill. 592.)  In this case claimant used the form of statement of claim in ordinary use before the commission, and in that statement filled in the blank, "Nature of work upon which injured was engaged at time of accident, and how caused," with the words, "Laborer in curled hair department; cut

fingers; septicæmia set in, causing his death June 2, 1924."
The evidence in this case wholly fails to sustain this allegation of the statement.

The judgment of the circuit court confirming the award of the commission must therefore be reversed and the award set aside.

*Reversed and award set aside.*

Mr. JUSTICE DEYOUNG took no part in this decision.